25CA1346 Peo in Interest of Hamilton 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1346
Pueblo County District Court No. 25MH30007
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Tyshun T. Hamilton,

Respondent-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Respondent, Tyshun T. Hamilton, appeals the district court's order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to involuntarily medicate him.  We affirm.

## I.    Background

¶ 2    Hamilton was committed to the hospital after being found incompetent to proceed in his criminal case.  He was diagnosed with schizophrenia and presented with symptoms that included disorganized thinking, auditory and visual hallucinations, and hypersexual behavior.  Hamilton had a history of suicide attempts, not responding to redirection, threatening to kill others, and requiring seclusion and manual restraint.  Initially, Hamilton took medication voluntarily, but after hospital staff found a pill hidden in his room, he admitted that he was not taking his medication.

¶ 3    In January 2025, the People filed a petition to involuntarily medicate Hamilton with olanzapine (Zyprexa) and valproic acid (Depakote).  The district court granted the People's petition based on the parties' stipulation.  After receiving consistent medication treatment, Hamilton's psychotic symptoms decreased, his self-injurious behavior resolved, and his hypersexual behavior decreased in severity and frequency.

¶ 4 In July 2025, the People petitioned the district court for review of the involuntary treatment order, asking the court for authorization to continue treatment with olanzapine and valproic acid. The court held an evidentiary hearing, at which Hamilton and his treating psychiatrist, Dr. Paul Mattox, testified. After hearing the evidence, the court found that Dr. Mattox had testified "credibly and persuasively" and that the People had established all four elements for the involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). It therefore granted the petition.

## II. Applicable Law and Standard of Review

¶ 5 A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's

need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.  *Id.*

¶ 6     Application of the *Medina* test involves mixed questions of fact and law.[1]  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support and review its legal conclusions de novo.  *Id.*

¶ 7     When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13 ("The testimony of the physician seeking to administer treatment may be sufficient by itself to satisfy" the *Medina* elements.).  As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along

---

[1] When the state seeks to administer antipsychotic drugs to a mentally ill criminal defendant involuntarily so that she can stand trial, a reviewing court applies the Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 178 (2003).  However, reviewing courts apply state law tests if the state, as here, seeks to administer antipsychotics involuntarily for "a different purpose," including a purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts his health gravely at risk."  *Id.* at 181–82.

with the inferences and conclusions to be drawn therefrom. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

### III.   Analysis

¶ 8     Hamilton contends only that the evidence was insufficient to prove the fourth *Medina* element. We disagree.

¶ 9     In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 10    The district court found that Hamilton had bona fide and legitimate reasons for his refusal, and it pointed to his concerns that the medication made him feel sick, "slow[ed] everything down," prevented him from "mov[ing] always as he want[ed] to," and caused shortness of breath and tiredness. But it found that these bona fide and legitimate interests were outweighed by the state's legitimate interest in "preserving [Hamilton's] life and health . . .

and protecting the safety of others." The record supports the district court's findings.

¶ 11     Dr. Mattox opined that the failure to medicate Hamilton would be more harmful than the risks posed by the requested medications. In support of this opinion, Dr. Mattox testified that, without the requested medications, Hamilton would likely "deteriorate," and he would become "assaultive towards staff," "re-engage in self-injurious behavior," and have "increased hypersexual behavior." Dr. Mattox noted that, since Hamilton had begun consistent medication, all his symptoms had improved "significantly."

¶ 12     Dr. Mattox acknowledged that the requested medications had potential adverse side effects. But he testified that Hamilton had tolerated the medications and that the staff had not observed any side effects. Dr. Mattox also noted that Hamilton has expressed his dissatisfaction with taking medication, but he did not fully understand the basis for his complaint. He also said that Hamilton said the medication "didn't make him feel right" but denied experiencing any of the common side effects.

¶ 13     On appeal, Hamilton maintains that the side effects he described — such as a "shakiness in [his] soul" — could not be observed by a third party and would not appear in a lab test. Consequently, he contends that the district court erred by "expressing skepticism" about whether he was experiencing side effects. We are not persuaded.

¶ 14     Although the court expressed some doubt about whether Hamilton was in fact experiencing the side effects that he described, it relied on Dr. Mattox's testimony to find that Hamilton had described "possible side effects." It then noted that, based on the evidence, his claim "could be accurate" and therefore concluded that Hamilton had bona fide and legitimate reasons to refuse medication. In other words, although the court identified the contrary evidence, it ultimately agreed with Hamilton that he had bona fide and legitimate reasons for refusing medication. We therefore discern no error.

¶ 15     To the extent that Hamilton now argues that the district court erred by attributing less than appropriate weight to the evidence of his bona fide and legitimate concerns, we are not persuaded to reach a different result for the following two reasons. First, the

record supports the court's findings about Hamilton's reported side effects, and we cannot reweigh the evidence to reach a different result. *See People in Interest of Ramsey*, 2023 COA 95, ¶ 30. Second, Hamilton presents no argument as to how his need for treatment was not sufficiently compelling to override his bona fide and legitimate concerns. Therefore, even if the court minimized his concerns, there is still no basis for us to conclude that those concerns outweighed the need for medication.

## IV. Disposition

¶ 16    The order is affirmed.

JUDGE FOX and JUDGE BROWN concur.